UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES of AMERICA <br><br> v. <br><br> DONALD E. WHITNEY III, <br><br> Defendant. | Criminal No. <br> 05-40005-FDS |

### MEMORANDUM AND ORDER
### ON DEFENDANT'S MOTION FOR ORDER
### TO PREVENT THE DISSEMINATION OF PRIVILEGED RECORDS

SAYLOR, J.

This matter concerns the applicability of the federal psychotherapist-patient privilege to certain juvenile records. The documents in dispute are various records of the Massachusetts Department of Youth Services, including psychiatric and psychological reports, created when defendant Donald E. Whitney III was in DYS custody as a result of sexual assaults on younger children. The issue arises in a somewhat peculiar procedural posture: defendant has pleaded guilty to federal drug trafficking charges, but has not yet been sentenced. Upon review of the Presentence Report, the United States Attorney's Office expressed concern that defendant might pose a danger to others, and moved for a hearing and examination pursuant to 18 U.S.C. § 4244(a) and (b) to determine whether he should be civilly committed to the Bureau of Prisons for psychiatric care or treatment.

The Court granted that motion and ordered defendant to submit to a psychiatric examination at the Bureau of Prisons. Defendant, however, indicated that he would assert his

Fifth Amendment rights and refuse to answer any questions under such circumstances. The Court then ordered that defendant's DYS records be provided to BOP for analysis and review. Defendant has objected to that order and has filed a motion to prevent the transfer of the records, based on the alleged applicability of the psychotherapist-patient privilege.

For the reasons set forth below, and in the attached Appendix, the Court concludes that the majority of the documents are not privileged and may be provided to BOP, and that others are privileged in part and may be provided in redacted form.

I.   **Background**

Defendant Donald E. Whitney III was born on April 14, 1983. In 1997, when he was 14 years old, he committed sexual assaults on two boys, aged 8 and 9. He was adjudged delinquent and committed to the custody of the Massachusetts Department of Youth Services. In connection with his initial commitment, and periodically thereafter, defendant was interviewed by psychiatrists, psychologists, social workers, and others, who created various reports and documents reflecting those communications.

On April 14, 2004, his 21st birthday, defendant was discharged from DYS custody. In November and December 2004, he committed the drug offenses at issue in this proceeding. He pleaded guilty to those charges on August 25, 2005.

In connection with preparation of the Presentence Report, and in anticipation of sentencing, the United States Probation Department obtained an order from this Court to DYS requiring it to turn over its records concerning defendant. DYS complied, and the Probation Officer summarized those records in her report and distributed the report to counsel.

Upon receipt of the draft Presentence Report, the United States Attorney's Office noted

for the first time that defendant had a history of dangerous sexual behavior. The government then filed a motion for a hearing on the present mental condition of defendant under 18 U.S.C. § 4244(a) and for a psychiatric or psychological examination under 18 U.S.C. § 4244(b). The Court granted that motion on January 18, 2006, and ordered that a psychiatric examination should be conducted by the United States Bureau of Prisons.

Defendant indicated through counsel, however, that he would refuse to respond to questions from BOP psychiatrists on Fifth Amendment grounds. In response, on February 6, 2006, the Court ordered that the records from DYS in the possession of the United States Probation Department should be provided to the BOP no later than February 27 for review and analysis.

Defendant then filed a motion on February 22, 2006, for an order to prevent the dissemination of the records. In essence, defendant contended that the release of DYS records from the Probation Department to the BOP would violate Mass. Gen. Laws ch. 119, § 60A (which provides generally that state court records in certain delinquency proceedings should be withheld from public inspection except with the consent of a justice of the juvenile court) and ch. 233, § 20B (which establishes a psychotherapist-patient privilege). On March 9, the Court stayed its order requiring the release of the documents to the BOP pending their *in camera* review and further briefing on the privilege issues. Defendant filed a further opposition to the release of privileged material on May 22, 2006, and the government filed a response on May 30.

II.     **Analysis**

At the outset, the Court notes that the issue to be decided is whether the documents are privileged as a matter of federal, not state, law and that, in any event, there has been no apparent

violation of any state statute.

First, the existence of any privilege in a federal proceeding is clearly governed by federal, not state, law. *See* Fed. R. Evid. 501; *United States v. Gillock*, 445 U.S. 360, 368 (1980).

Second, the release of defendant's DYS records to the federal probation department was entirely proper under state law. DYS released the records in connection with the preparation of the presentence report by the Probation Department in accordance with Mass. Gen. Laws ch. 120, § 21 and 109 C.M.R. § 3.04. DYS imposed no limitation on the use or re-release of those records for other purposes, and certainly not for any legitimate issues of sentencing or confinement in the federal court system.[1]

The Court next turns to general principles governing the privilege review. Federal law generally recognizes a psychotherapist-patient privilege. *Jaffee v. Redmond*, 518 U.S. 1, 15-17 (1996). "[A] party asserting the psychotherapist-patient privilege must show that the allegedly privileged communications were made (1) confidentially (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis or treatment." *In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 73 (1st Cir. 1999).

The first requirement is confidentiality; that is, the communication must be made in a confidential or private setting, outside the presence of third parties and not intended to be disclosed to others. *See Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984) (attorney-client privilege; "The key question in determining the existence of a privileged communication is 'whether the client reasonably understood the conference to be confidential.'") (quoting

---

[1] The provisions of ch. 119, § 60A appear to be irrelevant, as the documents are DYS records, not Juvenile Court records of delinquency proceedings.

MCCORMICK ON EVIDENCE, § 91 at 189 (1972)); *Barrett v. Vojtas*, 182 F.R.D. 177, 179 (W.D. Pa. 1998) ("There would be no reasonable expectation of confidentiality, and therefore no confidential intent, if a party to a conversation was aware that the other party may report on the conversation to a third party.").

The presence of third parties during a psychotherapist-patient communication is often sufficient by itself to undermine the confidentiality requirement. *See Cavallaro v. United States*, 284 F.3d 236, 246 (1st Cir. 2002) (attorney-client privilege). However, the presence of a parent during communications between a psychotherapist and a minor child will not ordinarily prevent the privilege from attaching. *See* 3 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 504.08[3] (Joseph M. McLaughlin, ed. 2d ed. 2006); *see also De Los Santos v. Superior Court of Los Angeles County*, 613 P.2d 233 (Cal. 1980) (attorney-client privilege under California law). It also appears that statements made in group therapy sessions, in the presence of multiple patients, can be privileged. *See* 3 WEINSTEIN'S FEDERAL EVIDENCE § 504.08[4].

In Massachusetts, the psychotherapist-patient privilege normally attaches to court-ordered psychiatric interviews unless the interviewee is advised otherwise. *See* Mass. Gen. Laws ch. 233, § 20B(b); *Commonwealth v. Lamb*, 365 Mass. 265, 267-68 (1974). For that reason, it is commonplace for records in DYS files to contain evidence of so-called "*Lamb*" warnings, advising the patient that the interview will be disclosed to court personnel and will not remain confidential.[2]

---

[2] In the present case, defendant was given "*Lamb*" or "lack of confidentiality" warnings on eight recorded occasions, each framed in slightly different terms. Defendant opposes release of the reports of those interviews on the grounds that he was told that the information would be used for certain specific purposes (e.g., a DYS

The second requirement is that the communication involve a licensed psychotherapist. The Supreme Court in *Jaffee* held that the privilege applies to communications to "licensed psychiatrists and psychologists" and "licensed social workers." 518 U.S. at 15-16. Given the Court's express use of the term "licensed," and in light of the vigorous dissent opposing the extension of the privilege even to *licensed* social workers, 518 U.S. at 27-35, it seems clear that the privilege does not apply to social workers, counselors, clinicians, advocates, and other counseling personnel who are not licensed, even if they are performing therapeutic functions.

The third requirement is that the communications occur in the course of diagnosis or treatment. "Whether a meeting occurred 'in the course of diagnosis or treatment' is a factual determination that rests upon consideration of the totality of the circumstances." *United States v. Romo*, 413 F.3d 1044, 1047 (9th Cir. 2005). Thus, for example, communications made in the course of investigations of suspected rules violations or criminal conduct or in disciplinary reports generally do not qualify. Likewise, clinical impressions based on observations (e.g., of how a patient interacts with others) generally do not qualify.

The party asserting the privilege bears the burden of showing by a preponderance of the evidence that the privilege applies. *In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d at 73. "To do so, the proponent of the privilege must set forth facts sufficient to establish all the elements of the claimed privilege." *Id.* That burden applies to each separate statement or item as to which a claim of privilege is made.

---

evaluation), but not that the information would lose its confidential nature entirely. For purposes of application of the federal psychotherapist-patient privilege, the issue is irrelevant. Either a communication is privileged from the outset, or it is not. If the communication is not intended to be kept confidential between the psychotherapist and the patient, it is not privileged, even if the patient did not understand the full implications of that lack of confidentiality.

6

The psychotherapist-patient privilege, like any privilege, prevents the dissemination and use of truthful information, even at the price of possible injustice. Because privileges obstruct the search for the truth, they are to be construed narrowly. *United States v. Roberson*, 859 F.2d 1376, 1378 (9th Cir. 1988) (marital communications privilege); *see Trammel v. United States*, 445 U.S. 40, 50 (1980) (spousal testimony privilege). That principle has particular force here, where the stakes are quite high for the defendant (who faces the possibility of extended confinement) and the public (which faces the possibility of premature release of a potentially dangerous person). Under the circumstances, the Court will construe the privilege strictly and will hold the defendant to his burden of proof in every instance.[3]

The psychotherapist-patient privilege, like any privilege, can be waived. Such a waiver may be express, or may be implied from any conduct or disclosure that is inconsistent with the maintenance of the privilege. *See United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

The documents at issue here were created between July 1997 (when the defendant was 14 years old) and April 2004 (when he turned 21); his 18th birthday was on April 14, 2001. There is little question that a minor may claim the protection of the privilege. *See In re Daniel C.H.*, 269 Cal. Rptr. 624 (Cal. Ct. App. 1990). Although the issue is not free from doubt, it appears that a

---

[3] The Supreme Court observed in *Jaffee* that "we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or others can be averted only by means of a disclosure by the therapist. 518 U.S. 18 n.19. The existence and contours of such a "dangerous patient" exception have been debated in the Courts of Appeals since *Jaffee*. *See United States v. Chase*, 340 F.3d 978 (9th Cir. 2003) (en banc) (no such exception exists); *United States v. Hayes*, 227 F.3d 578 (6th Cir. 2000) (no such exception exists); *United States v. Glass*, 133 F.3d 1356 (10th Cir. 1998) ("dangerous patient" exception required factual determination by district court). The present case, at least in its current posture, does not fall within any such exception, and the Court therefore need not reach the issue.

minor can also waive the privilege.[4] Although Whitney was not an adult at all relevant times, he was not a young child, and he was certainly capable of understanding a warning that information he revealed to a psychotherapist would not remain confidential.

In the present case, Whitney (the proponent of the privilege) has offered no affidavits or other testimonial evidence supporting the existence of the privilege. The existence of the privilege as to any particular document must therefore stand or fall only by reference to the statements set forth in the documents themselves.

In several instances, it is clear that Whitney is communicating with counseling professionals, but there is no evidence that the counselors are licensed psychiatrists, licensed psychologists, or licensed social workers.[5] Because Whitney bears the burden of proving the existence of the privilege, and because the Court is construing the privilege strictly, it has concluded that such communications are not privileged.

The Court's document-by-document analysis and conclusions are set forth in the Appendix to this Memorandum and Order. The Appendix, the exhibits thereto, and the Court's copies of the records at issue shall be filed under seal pending further order of the Court.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for an Order to Prevent the Dissemination of Privileged Records is DENIED in part and GRANTED in part. The records of the

---

[4] A contrary rule would create highly anomalous results. For example, if it were possible to disclose privileged information without waiving the privilege, a minor could simultaneously disclose privileged information as a sword where it was to his benefit and claim the privilege as a shield to prevent that same privileged information from being used against him.

[5] The Court also notes that none of the records in the DYS file are marked "privileged" or "confidential."

Massachusetts Department of Youth Services in the possession of the United States Probation Department concerning defendant Donald E. Whitney III, as redacted consistent with the terms of this Memorandum and Order, shall be provided to the Bureau of Prisons for analysis and review, together with a copy of this Memorandum and Order, by September 1, 2006.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: August 11, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

SEALED DOCUMENT