**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **UNITED STATES of AMERICA** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Criminal No.** |
| **DONALD E. WHITNEY III,** | ) | **05-40005-FDS** |
| | ) | |
| **Defendant.** | ) | |

**AMENDED MEMORANDUM AND**
**ORDER VACATING PRIOR ORDER FOR HEARING**
**ON MENTAL DISEASE AND FOR PSYCHIATRIC EXAMINATION**

**SAYLOR, J.**

This is a criminal prosecution for distribution of the drug ecstasy that presents a difficult, if largely unrelated, question concerning possible civil commitment under 18 U.S.C. § 4244.

Defendant Donald E. Whitney III has pleaded guilty to federal drug trafficking charges, but has not yet been sentenced. The Presentence Report prepared by the Probation Department in anticipation of sentencing revealed certain information concerning the defendant's personal history, including the fact that he had been committed to the Massachusetts Department of Youth Services from ages 14 to 21 as a result of committing sexual assaults on younger children. Upon review of the Presentence Report, the government moved for a hearing and examination pursuant to 18 U.S.C. § 4244(a) and (b) to determine whether defendant should be civilly committed to the Bureau of Prisons for psychiatric care or treatment, independent of any sentence that might be imposed on the drug trafficking charges.

The Court granted that motion and ordered defendant to submit to a psychiatric examination at the Bureau of Prisons. Defendant, however, indicated that he would assert his

Fifth Amendment rights and refuse to answer any questions under such circumstances. Although the Fifth Amendment right against self-incrimination does not generally attach in civil commitment proceedings, it nonetheless raised questions, in the context of this case, whether an involuntary interview would be a useful exercise. The Court then ordered that various records, including psychiatric records, from the Massachusetts Department of Youth Services be provided to BOP for analysis and review, after redactions to preserve the psychotherapist-patient privilege, to determine what BOP's position as to possible commitment might be.

After review of the records, the Chief Psychiatrist at the Bureau of Prisons advised the Court that the BOP could not give the Court a formal report or evaluation without an examination of the defendant, and that there was nothing in the records to indicate that defendant had ever been diagnosed with a mental illness that would require hospitalization for purposes of treatment. Upon receipt of that information, and in consideration of all the circumstances, the government elected to abandon any further efforts under § 4244 and to proceed to sentencing. The Court agreed to vacate its prior orders calling for a hearing and examination. This Memorandum and Order sets forth the background of this matter and the Court's reasons for vacating the orders.

**I.     Background**

Defendant Donald E. Whitney III was born on April 14, 1983. In 1997, when he was 14 years old, he committed sexual assaults on two boys, aged 8 and 9. He was adjudged delinquent and committed to the custody of the Massachusetts Department of Youth Services. In connection with his initial commitment, and periodically thereafter, he was interviewed by psychiatrists, psychologists, social workers, and others, who created various reports and documents reflecting

those communications.

On April 14, 2004, his 21st birthday, defendant was discharged from DYS custody. In November and December 2004, he committed the drug offenses at issue in this proceeding. On February 2, 2005, he was indicted on one count of conspiracy to distribute ecstasy in violation of 21 U.S.C. § 846 and three counts of possession with intent to distribute and distribution of ecstasy in violation of 21 U.S.C. § 841(a)(1). On August 25, 2005, he pleaded guilty to those charges.

The matter was originally set for sentencing on November 17, 2005.[1] On November 18, 2005, the government moved pursuant to 18 U.S.C. § 4244(a) for a hearing on the present mental condition of the defendant. It also moved for a psychiatric or psychological examination under 18 U.S.C. § 4244(b).[2] The basis of the government's motion was the fact that the Presentence

---

[1] According to the Presentence Report, the advisory guideline imprisonment range under the United States Sentencing Guidelines applicable to this matter is 27 to 33 months. The maximum term of imprisonment is 20 years. 21 U.S.C. § 841(b)(1)(C). Defendant has been detained awaiting sentencing.

[2] The statute provides in relevant part as follows:

> **(a) Motion to determine present mental condition of convicted defendant.**—A defendant found guilty of an offense, or the attorney for the Government, may, within ten days after the defendant is found guilty, and prior to the time the defendant is sentenced, file a motion for a hearing on the present mental condition of the defendant if the motion is supported by substantial information indicating that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility. The court shall grant the motion, or at any time prior to the sentencing of the defendant shall order such a hearing on its own motion, if it is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility.
>
> **(b) Psychiatric or psychological examination and report.**—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court . . . .

18 U.S.C. §§ 4244(a), (b).

Report set forth "substantial information that defendant may be suffering from a qualifying mental disease or defect." In particular, the government contended that "Whitney's history shows that he is a dangerous offender with a significant potential to commit very serious crimes, including crimes against children," and that the Presentence Report presented Whitney "as a serious sexual offender, who is stimulated by fantasies involving a mixture of sex and violence, and who is likely to commit sexual and violent offenses, if he is not treated and supervised."

Defendant opposed the government's motions on three grounds: (1) that the motion was untimely; (2) that the alleged mental disease or defect does not relate in any way to the charged crime; and (3) that the government does not have "substantial information" that the defendant is presently suffering from a mental disease or defect. Defendant also indicated that he intended to assert a Fifth Amendment privilege to refuse to respond to any questions put to him by a psychiatrist as part of a court-ordered examination that might lead to a custodial confinement.

By memorandum and order dated January 18, 2006, the Court rejected those arguments and granted the government's motion for a hearing and psychiatric examination. As to the claim of Fifth Amendment privilege, the Court noted that the privilege does not generally attach in circumstances where a truthful answer might result in a civil commitment, but could attach where a truthful answer might incriminate a defendant in future criminal proceedings or increase his punishment.

After a further hearing on February 6, 2006, the Court ordered that the records from DYS in the possession of the United States Probation Department should be provided to the BOP no later than February 27 for review and analysis. Defendant then filed a motion on February 22, for an order to prevent the dissemination of the records. In essence, defendant contended that the

release of DYS records from the Probation Department to the BOP would violate Mass. Gen. Laws ch. 119, § 60A (which provides generally that state court records in certain delinquency proceedings should be withheld from public inspection except with the consent of a justice of the juvenile court) and ch. 233, § 20B (which establishes a psychotherapist-patient privilege).  On March 9, the Court stayed its order requiring the release of the documents to the BOP pending their *in camera* review and further briefing on the privilege issues.  After further proceedings and an *in camera* review of the documents, the Court ordered on August 11 that they be produced in redacted form to the BOP.

On August 29, 2006, the Court received the following communication from Shelley R. Stanton, M.D., the Chief Psychiatrist of the Federal Bureau of Prisons:

> I have reviewed the [DYS] records [of Mr. Whitney].  We cannot give the court a formal report or evaluation without examination of Mr. Whitney.  However, there is nothing in the records to indicate that he has ever been diagnosed with a mental illness other than Attention Deficit Disorder.  The intent of the 4244 statute is to provide for hospital treatment for a severely mentally ill person, and once the person has recovered then he goes back to court for final sentencing.  ADD does not require hospitalization and would not be considered a mental illness in need of treatment under this statute.  However, that said, we cannot even give you an opinion as to whether he has ADD, since he has not received an evaluation from us.

On September 14, 2006, the Court held a status conference in this matter, during which it inquired of the government whether it intended to pursue the matter any further.  Counsel for the government indicated that, under the circumstances, it would withdraw its request for a hearing and examination.  The Court agreed to vacate its prior orders and to set sentencing for October 25, 2006.

## II.     Analysis

This case sits at an odd juncture. The defendant is before the Court for sentencing on federal drug trafficking charges—charges that have nothing to do with whether he is a sexually dangerous person. However, the statute at issue, 18 U.S.C. § 4244, by its terms may be invoked only between the time of conviction and the time of sentencing, and therefore the Court cannot postpone consideration of the issue until after the defendant has served his sentence. If the Court is to require civil commitment of the defendant, it must make that decision before it imposes sentence.

Furthermore, the statute is directed only to the treatment of the defendant: it applies where the defendant requires "custody for care or treatment [of mental disease or defect] in a suitable facility." It therefore does not appear to address the situation where civil commitment may be desirable for the protection of the public. *Compare* Mass. Gen. Laws ch. 123A §§ 1 to 16 (providing procedures for diagnosis and treatment of sexually dangerous persons in order both to protect society and secure and rehabilitate the affected persons). In this case, there is no evidence that the defendant needs to be placed in custody "for care or treatment."

Complicating matters further is the issue of the assertion of the defendant's Fifth Amendment rights. While the Fifth Amendment does not generally attach in civil commitment proceedings, it may nonetheless apply where a truthful answer might incriminate a defendant in future criminal proceedings or increase his punishment. *See Allen v. Illinois*, 478 U.S. 364, 372 (1986); *Estelle v. Smith*, 451 U.S. 454 (1981). More fundamentally, the cornerstone of any psychiatric or psychological examination is an interview of the patient. *See, e.g.*, MICHAEL J. VERGARE, ET AL., PRACTICE GUIDELINE FOR THE PSYCHIATRIC EVALUATION OF ADULTS (2d Ed.

2006) at 25 ("The psychiatrist's primary assessment tool is the direct face-to-face interview of the patient."). Indeed, in this case, the Bureau of Prisons Chief Psychiatrist has stated that she cannot give the court a formal analysis or evaluation of the defendant without an examination. Where, however, the patient refuses to answer questions, refuses to cooperate, or answers only grudgingly, the usefulness of the examination may be greatly diminished, if not entirely negated.

Thus, it is highly doubtful whether the government would be able to establish that the defendant is in need of custodial *treatment* (as opposed to custody for public protection). Under the circumstances, the United States has concluded that it will not attempt to continue to proceed under the statute. This Court agrees.

After the government's decision to abandon its efforts under § 4244, counsel for the government became aware (and advised the Court) that on July 26, 2006, Congress enacted 18 U.S.C. § 4248, which created a statutory mechanism permitting the civil commitment of sexually dangerous persons under certain circumstances. Under § 4248(a), among other things, the Department of Justice may institute civil commitment proceedings against a person who is in the custody of the Bureau of Prisons if that person is certified to be sexually dangerous. Defendant was sentenced on October 25, 2006, and is therefore now in the custody of the Bureau of Prisons. The Court takes no position on the applicability of § 4248 to this case, and the government has not invoked the statute other than to call it to the Court's attention. Whether it is appropriate to invoke it as to this defendant will await further developments.

### III.   Conclusion

For the foregoing reasons, the Court's prior Order dated January 18, 2006, requiring a hearing on the present mental condition of defendant Donald E. Whitney III, pursuant to 18

U.S.C. § 4244(a), and a psychiatric or psychological examination pursuant to § 4244(b), is hereby VACATED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: October 26, 2006